IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| JAMES A. ROE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. 1:11-CV-226-BL |
| | § | ECF |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | Assigned to U.S. Magistrate Judge |

## MEMORANDUM OPINION AND ORDER

**THIS CASE** is before the court upon Plaintiff's complaint filed November 21, 2011, for judicial review of the administrative decision of the Commissioner of Social Security denying Plaintiff's application for a period of disability and disability insurance benefits and for supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act. Plaintiff filed a brief in support of his complaint on August 6, 2012 (Doc. 23). Defendant filed a response on September 4, 2012 (Doc. 24). The parties consented to having the United States magistrate judge conduct all further proceedings in this matter. This court has considered the pleadings, the briefs, and the administrative record and finds that the Commissioner's decision should be affirmed and that Plaintiff's complaint should be dismissed with prejudice.

# I. STATEMENT OF THE CASE

Plaintiff protectively filed an application for benefits on May 22, 2009, and an application for supplemental security income on April 30, 2009, alleging disability beginning August 24, 2007. Tr. 108-109. Plaintiff's application was denied initially and upon reconsideration. Tr. 51-56, 60. Plaintiff filed a Request for Hearing by Administrative Law Judge on December 14, 2009, and this case came for hearing before the Administrative Law Judge ("ALJ") on September 30, 2010. Tr. 71, 29-46. Plaintiff, represented by an attorney, testified in his own behalf. Tr. 32-43. A vocational expert ("VE"), provided testimony. Tr. 43-45. The ALJ issued a decision unfavorable to Plaintiff on January 13, 2011. Tr. 11-30.

In his opinion, the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act. Tr. 14. The ALJ also noted that Plaintiff had acquired sufficient quarters of coverage to remain insured through December 31, 2010. *Id.*

The ALJ found that Plaintiff had not engaged in substantial gainful activity at any time since April 27, 2007. Tr. 16. The ALJ further found that Plaintiff has a "severe" combination of impairments, coronary artery disease, disc osteophyte complex and facet arthropathy at C5-6, obesity, anxiety disorder (not otherwise specified), and attention deficit hyperactivity disorder ("ADHD"), combined type. Tr. 16. The ALJ also found that Plaintiff's borderline intellectual functioning was a non-severe impairment. *Id.*

The ALJ found that Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1. Tr. 22. The ALJ noted that he had considered those sections of the Listing that addressed cardiovascular, musculoskeletal, and mental disorders. Tr. 17.

The ALJ indicated that in considering Plaintiff's mental impairments, he found that Plaintiff

experienced mild restriction in the activities of daily living; moderate difficulties in social functioning; moderate difficulties with concentration, persistence, or pace; and no episodes of decompensation of extended duration. Tr. 17-18. The ALJ also indicated that in making the RFC determination, he had considered the degree of limitation imposed by Plaintiff's mental impairments. Tr. 18.

The ALJ acknowledged that in making the RFC assessment, he must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence, based on the requirements of Social Security Ruling 96-7p. Tr. 18.

Therefore, the ALJ was required to determine whether Plaintiff retained the residual functional capacity ("RFC") to perform his past relevant work or other work existing in the national economy.

The ALJ discussed Plaintiff's testimony and found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the symptoms he alleged. Tr. 18-19, 21-22. The ALJ found Plaintiff's allegation of chest pain was credible, but the objective medical evidence did not demonstrate findings consistent with disabling chest pain. Tr. 21. The ALJ also found that Plaintiff's subjective allegations concerning the intensity, persistence, and limiting effects of his symptoms had only limited credibility insofar as he was not disabled as a result of the limitations imposed by his impairments. Tr. 21-22. The ALJ indicated that he considered Plaintiff's subjective complaints and compared them with medical evidence of record. Tr. 18-22. The ALJ indicated that due to Plaintiff's symptoms and the limitations imposed by his physical impairments, the RFC was limited to sedentary level work. Tr. 22. The ALJ found that, because of Plaintiff's moderate limitations in social function and concentration, persistence, or pace caused by his mental

impairments, Plaintiff was limited to noncomplex tasks requiring no indenpendent judgment and no interaction with the public. Id. The ALJ found that the additional limitations alleged by Plaintiff as to his level of pain, subjective complaints, and other functional limitations, were not entirely credible or reasonably supported by the objective medical evidence. Id.

The ALJ found that Plaintiff was unable to perform any of his past relevant work. Tr. 22. The ALJ noted that Plaintiff was a "younger individual" at the time of the decision, with a marginal education, and the ability to communicate in English. Tr. 23. The ALJ noted that transferability of job skills was not an issue in this case because Plaintiff's past relevant work was unskilled. Id. The ALJ noted that if Plaintiff had retained the RFC to perform a full range of light work, the Medical-Vocational Guidelines would have directed a conclusion of "not disabled." Id. Because of Plaintiff's limitations, the ALJ turned to the expert testimony of the VE to determine whether jobs exist in the national economy for a person of Plaintiff's age, educations, work experience, and RFC. Tr. 23. The ALJ relied upon the testimony of the VE, who indicated that such an individual could perform the requirements of several jobs including: assembler; sorter; and hand packager. Tr. 23. The VE provided that the numbers of the jobs identified included a significant reduction to reflect Plaintiff's marginal education and mental limitations. Id. The ALJ thus found that Plaintiff was not disabled. Tr. 24.

Plaintiff submitted a Request for Review of Hearing Decision/Order on March 4, 2011. Tr. 107-109. The Appeals Council denied Plaintiff's request on August 17, 2011, indicating that although it had considered the contentions raised in Plaintiff's Request for Review, it nevertheless concluded that there was no basis for changing the ALJ's decision. Tr. 8-10. The ALJ's decision, therefore, became the final decision of the Commissioner.

On November, 2011, Plaintiff commenced this action which seeks judicial review of the Commissioner's decision that Plaintiff was not disabled.

## II. STANDARD OF REVIEW

An applicant may obtain a review of the final decision of the Commissioner by a United States district court. 42 U.S.C. § 405(g). The court's review of a denial of disability benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). The court will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (quoting *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)).

In order to qualify for disability insurance benefits or SSI, a claimant has the burden of proving that he or she has a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. *Newton*, 209 F.3d at 452; *see* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271;

*Newton*, 209 F.3d at 453. In this case the ALJ found at step 5 that Plaintiff was not disabled because he retained the ability to perform work in the national economy. Tr. 31.

### III. DISCUSSION

Plaintiff claims that the ALJ's decision is not supported by substantial evidence because the RFC determination does not reflect the limitations imposed by Plaintiff's mental and physical impairments. Plaintiff also argues that the ALJ erred by relying upon testimony of the VE which may have conflicted with the *Dictionary of Occupation Titles* ("DOT").

The ultimate issue is whether the ALJ's decision is supported by substantial evidence. The court, therefore, must review the record to determine whether it "yields such evidence as would allow a reasonable mind to accept the conclusion reached by the ALJ." *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000).

**A. Whether the ALJ failed to incorporate the limitations imposed by Plaintiff's impairments into the RFC.**

Plaintiff argues that the ALJ erred in making the RFC determination by failing to include all of the limitations imposed by Plaintiff's mental and physical impairments. Plaintiff specifically alleges that the ALJ failed to incorporate postural limitations associate with his neck impairments into the RFC finding and failed to include all of the limitations imposed by his anxiety, ADHD, and borderline intellectual functioning.

The claimant has the burden to prove that he is disabled within the meaning of the Social Security Act. *Fraga v. Bowen*, 810 F.2d 1296, 1301 (5th Cir. 1987). A physical or mental impairment is in turn defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The existence of an impairment does not in itself

establish disability; a claimant is disabled only if he or she is "incapable of engaging in any substantial gainful activity." *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir.1986).

In determining whether a claimant's physical or mental impairments are of a sufficient medical severity as to be the basis of eligibility under the law, the ALJ is required to consider the combined effects of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. *See* 20 C.F.R. § 404.1523. *Loza*, 219 F.3d at 393. If the ALJ finds a medically severe combination of impairments, "the combined impact of the impairments will be considered throughout the disability determination process." *Id.* Plaintiff argues that the ALJ failed to incorporate postural limitations into the RFC determination which adequately reflected the limitations imposed by his severe neck impairment.

The term "residual functional capacity assessment" describes an adjudicator's finding about the ability of an individual to perform work-related activities. Soc. Sec. Ruling 96-5p (July 2, 1996) ("SSR 96-5p"). The RFC assessment is based upon "*all* of the relevant evidence in the case record," including, but not limited to, medical history, medical signs, and laboratory findings; the effects of treatment; and reports of daily activities, lay evidence, recorded observations, medical source statements, and work evaluations. Soc. Sec. Ruling 96-8p (July 2, 1996) ("SSR 96-8p") (emphasis in original). The ALJ is responsible for determining a claimant's RFC. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In making the RFC assessment and in determining the limitations imposed by a claimant's impairment(s), the ALJ is instructed to consider the entire record. Soc. Sec. Ruling 96-7p (July 2, 1996) ("SSR 96-7p").

The ALJ decision includes a discussion of Plaintiff's complaints of neck pain, numbness in his arm, and diminished grip. Tr. 19. The ALJ noted the findings upon physical examination by Debbie Crawford, D.O., a consultative medical examiner. Tr. 20. These findings included a non-

tender thoracic and lumbar spine, negative straight leg raising bilaterally, the ability to squat and bend, no muscle weakness or atrophy, good grip strength bilaterally, and a slight limp to the right side. *Id.* The ALJ noted the findings of Dr. Strefling, who treated Plaintiff for chronic neck pain. *Id.* Dr. Strefling noted a grade 1 limitation of rotation upon examination. *Id.* The ALJ noted Plaintiff's allegations of pain in his neck, arms, backs and hips; and the findings upon physical examination, x-rays, and MRI testing. Tr. 21. The ALJ noted that Plaintiff took over the counter medications and experienced some improvement in his neck pain with injections. *Id.* The ALJ compared Plaintiff's subjective allegations with the objective findings of the examining physicians. *Id.* The ALJ indicated that due to the symptoms and limitations of Plaintiff's physical impairments, he was limited to work at the light exertional level.[1] Tr. 21-22.

Plaintiff argues that the RFC failed to include adequate limitations to reflect his neck impairment. However, the ALJ specifically indicated that he had limited the RFC to reflect Plaintiff's physical impairments. Plaintiff points to how testimony and reports of his pain and the limitations imposed by such pain.

The ALJ may discount subjective complaints of pain as inconsistent with other evidence in the record. *See Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003) (citing *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991) (citation omitted)). The subjective testimony of Plaintiff must be weighed against the objective evidence of medical diagnosis. *Chaparro v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987) (citing *Jones v. Heckler*, 702 F.2d 616, 621 n.4 (5th Cir. 1983)). Subjective evidence need not take precedence over objective evidence. *Villa v. Sullivan*, 895 F.2d 1019, 1024

---

[1] The court notes that the ALJ indicated at one point in his opinion that he had limited Plaintiff to work at the sedentary exertional level in his opinion. Tr. 22. However, the ALJ found Plaintiff retained the RFC to perform a range of work at the light exertional level and the hypothetical question presented to the vocational expert is consistent with this RFC finding.

(5th Cir. 1990) (citing *Hollis v. Bowen*, 837 F.2d 1378, 1385 (5th Cir 1988)). Moreover, a factfinder's evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence. *Villa*, 895 F.2d at 1024 (citing *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987). "How much pain is disabling is a question for the ALJ since the ALJ has primary responsibility for resolving conflicts in the evidence." *Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir.1991) (citing *Villa*, 895 F.2d at 1022).

The ALJ discussed Plaintiff's complaints of numbness and reduced grip, and found Plaintiff's allegations not entirely credible, pointing to conflicts between such complaints and the medical evidence of record. The ALJ appropriately resolved such conflicts in the evidence. His findings reflect his credibility determination. The ALJ's physical RFC determination is supported by substantial evidence in the record.

Plaintiff also argues that the ALJ erred by failing to include additional limitations related to his mental impairments. Plaintiff notes that after the ALJ decision, additional evidence was submitted by Donna Ringhoffer Med, LPC on May 17, 2011. Tr. 343-44. He argues that the evidence of record indicate that his borderline intellectual functioning and mental health impairments have imposed significantly greater restrictions on his ability to perform work-related activities, relate to others, and sustain employment than is indicated in the ALJ's RFC determination.

The ALJ's opinion demonstrates that he considered Plaintiff's borderline intellectual functioning and found that it was not severe. Tr. 16-17. The ALJ discussed Plaintiff's testimony regarding his mental impairments, the findings of the psychological consultative examiner, and the opinions of the State agency medical consultants. Tr. 16-22. The ALJ explained that the RFC reflected the Plaintiff's moderate limitations in concentration, persistence, and pace; and moderation limitations in social functioning insofar as Plaintiff is limited to noncomplex tasks requiring no

independent judgment and no interaction with the public. The record before the ALJ provides substantial evidence to support the mental RFC determination.

Plaintiff points to additional evidence which was not before the ALJ; specifically, the questionnaire completed by Ms. Ringhoffer. However, Plaintiff's reliance upon this questionnaire is misplaced.

The court first notes that Ms. Ringhoffer is not an acceptable medical source as defined in 20 C.F.R. § 404.1513 (a). Insofar as Plaintiff alleges that remand is appropriate for the ALJ to consider this as new evidence, the court notes that the questionnaire is dated May 17, 2011, and indicates that Ringhoffer had met with Plaintiff on a weekly basis since April 6, 2011.[2] Tr. 343-44.

When new evidence becomes available after the Secretary's decision and there is a reasonable probability that the new evidence would change the outcome of the decision, a remand is appropriate so that this new evidence can be considered. To justify a remand, 42 U.S.C. § 405(g) requires that the evidence must be new and material and there must be good cause for the Plaintiff's failure to incorporate the evidence into the record before the ALJ's decision. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Haywood v. Sullivan*, 888 F.2d 1463, 1471 (5th Cir. 1989). *Ripley* further provides that in order to be material, such new evidence must relate to the time period for which the disability benefits were denied, and there must be a reasonable probability that this new evidence would change the outcome of the Secretary's decision. 67 F.3d at 555. The court will

---

[2] The record indicates this evidence was submitted to the Appeals Council as new medical evidence on May 24, 2011. Tr. 342. A transmittal letter indicates that the questionnaire was dated May 17, 2011. *Id.* The questionnaire itself indicates that the dates of treatment were from April 6, 2012 through May 18, 2012, but is actually dated May 17, 2010. Tr. 343. The Appeals Council order, which indicated that the council had considered the questionnaire completed by Ms. Ringhoffer, was issued on August 17, 2011. Plaintiff's brief references treatment from April 6, 2012 to May 17, 2012. Pl. Brief at 8. It actually appears that the questionnaire was completed on May 17, 2011, and was based on sessions from April 6, 2011 through May 17, 2011.

review new evidence only to determine if a remand is appropriate. *Id.* Pursuant to *Higginbotham v. Barnhart*, the court finds that the additional medical evidence is not material. *See* 405 F.3d 332, 337 (5th Cir. 2005). The questionnaire does not apply to a time period prior to the expiration of Plaintiff's insured status.

Neither the ALJ nor the Appeals Council erred by failing to appropriately consider the questionnaire completed by Ms. Ringhoffer and such evidence is not material to the ALJ decision. The ALJ's mental RFC finding and the limitations incorporated therein reflect Plaintiff's severe mental impairments and are supported by substantial evidence in the record.

**B.      Whether the ALJ erred by relying upon testimony of the VE which may have conflicted with jobs as described in the *Dictionary of Occupational Titles*.**

Plaintiff argues that the ALJ erred at step 5 of the sequential evaluation process in finding that Plaintiff retained the RFC to perform work which exists in the national or regional economy. Plaintiff alleges that the ALJ should not have relied upon the testimony of the VE, insofar as such testimony failed to indicate which DOT titles corresponded to the jobs identified by the VE.

A vocational expert is called to testify because of his familiarity with job requirements and working conditions. *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (citing *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir.1986)). "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Id.* In testifying, a vocational expert "is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job." *Fields*, 805 F.2d at 1170.

Clearly, an ALJ may not rely on evidence provided by a VE if that evidence is based on underlying assumptions or definitions that are inconsistent with the agency's regulatory policies or definitions – such as exertional level, skill level, and transferability of skills. *See* Soc. Sec. Ruling

-11-

00-4p (December 4, 2000) ("SSR 00-4p"). This Ruling notes that neither the DOT nor evidence from a VE "trumps" the other. *Id.* Rather, "[t]he DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings." *Id.* SSR 00-4p notes that the VE may provide testimony regarding the requirements of a particular job "as it is performed in specific settings." This ruling also requires the ALJ to ask about any possible conflicts between the testimony of the VE and the information provided in the DOT. *Id.*

The Social Security Administration has taken "administrative notice" of the DOT. *See* 20 C.F.R. § 416.966(d)(1). However, the Fifth Circuit has recognized that "the DOT is not comprehensive, in that it cannot and does not purport to include each and every specific skill or qualification for a particular job." *Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir. 2000) (citing *Fields*, 805 F.2d at 1171).

In *Carey* the Fifth Circuit addressed a case in which the claimant argued that the testimony of the VE, upon which the ALJ relied, conflicted with the *Dictionary of Occupational Titles*. 230 F.3d at 146. The Court again noted that "[t]he value of a vocational expert is that he [or she] is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed," and found that "DOT job descriptions should not be given a role that is exclusive of more specific vocational expert testimony with respect to the effect of an individual claimant's limitations on his or her ability to perform a particular job." *Id.* at 145; see *Fields*, 805 F.2d at 1170. The Court indicated its agreement with the majority of the circuits that the ALJ may rely upon the VE's testimony, provided that the record reflects an adequate basis for doing so.

In this case the ALJ presented the hypothetical questions to the VE. Tr. 44. This

hypothetical included a younger individual with a marginal education, with Plaintiff's work history, an RFC for light work limited to non-complex tasks requiring no independent judgment and without any interaction with the public. *Id.* The VE testified that a person with Plaintiff's vocational history and RFC could perform unskilled work in the economy at the, light exertional level, and specifically identified the jobs of hand packagers; assembly work and assemblers; and graders and sorters. *Id* The VE specifically testified that the numbers of jobs identified were "significantly reduced" for a marginal education level. Tr. 44-45. Plaintiff's representative was given the opportunity to question the VE. Like the representative of the claimant in *Carey*, Plaintiff's representative did not question the VE about the issue of whether there was a conflict between the DOT and the testimony of the VE, nor did she question the VE as to the specific DOT numbers that correlated to the jobs identified. *See Carey*, 230 F.3d at 146. The VE testified that the jobs identified could be performed with the limitations included in the RFC assessment. Tr. 44-45. In testifying, the VE appropriately used her special expertise "to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job." *Fields*, 805 F.2d at 1170. SSR 00-4p specifically notes that "[t]he DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings" and further indicates that the VE may provide testimony regarding the requirements of a particular job "as it is performed in specific settings." The record demonstrates that the VE in this case specifically testified that a hypothetical person with Plaintiff's vocational history and RFC could perform the jobs identified. The value of a VE is the ability to testify regarding whether a job may be performed with specific limitations and under specific conditions. The VE was presented with a hypothetical question that incorporated the limitations noted. While the VE was not questioned by the ALJ as to whether her

testimony conflicted with the DOT, Plaintiff's representative did not raise the issue of an implied or indirect conflict between the VE testimony and the DOT. "[C]laimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing." *Carey*, 230 F.3d at 146-147. Here, as in *Carey*, the testimony of the VE that Plaintiff could perform the identified jobs with his RFC, in the context of the record as a whole, is sufficient to support the ALJ's step 5 determination that Plaintiff could perform other available work. *Id.*

Plaintiff also argues that the ALJ erred by failing to properly analyze consider whether Plaintiff's mental impairments limited his ability to sustain employment. The ALJ found in his opinion that Plaintiff could "obtain, perform, and maintain [the identified] residual functional capacity for a sustained basis." Tr. 18. Plaintiff generally asserts that his mental impairments cause significant restrictions on his ability to sustain employment.

In *Singletary v. Bowen,* the Fifth Circuit explained that "[a] determination that a claimant is unable to continue working for significant periods of time must, however, be supported by more than a claimant's personal history; it must also be supported by medical evidence. 798 F.2d 818, 822 (5th Cir. 1986) (citing 20 C.F.R. §§ 404.1546; 404.1560). The claimant in *Singletary* was found to be more limited than Plaintiff and was characterized by one physician as "an inadequate personality with periodic alcohol and drug abuse that leads to transient psychotic episodes in a person with low average intelligence, who has had some diffuse brain damage, has had a nomadic life and who had a chaotic rearing," who engaged in inappropriate behavior and poor social adjustment. 798 F.2d at 823. In *Frank v. Barnhart,* the Fifth Circuit explained that *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002), requires a situation in which, "by its nature, the claimant's physical ailment waxes

and wanes in its manifestation of disabling symptoms," and further explained that evidence indicating the claimant's degenerative disc disease, such as the fact that every number of weeks she lost movement in her legs, would be relevant to a determination of ability to maintain employment. 326 F.3d 618, 619 (5th Cir. 2003).

The medical evidence of record also fails to indicate that Plaintiff's condition "waxes and wanes" like that of the claimant in *Singletary*. Plaintiff's representative questioned the VE as to whether additional limitations on concentration could maintain appointment. Tr. 45. The VE testified that an ongoing problem requiring a supervisor to frequently interview would make sustaining employment difficult. *Id*. The ALJ did not incorporate such limitation into the RFC finding, which is supported by substantial evidence. The hypothetical question posed to the VE appropriately incorporated those limitations supported by the record. The court finds that the ALJ did not err in finding that Plaintiff could sustain employment, and such finding is supported by substantial evidence in the record.

## IV. CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, the court finds that the Commissioner's decision is supported by substantial evidence in the record and should be affirmed, that Plaintiff's complaint should be **DISMISSED WITH PREJUDICE**, and that judgment should be entered in favor of the Defendant.

**IT IS, THEREFORE, ORDERED** that the decision of the Commissioner is **AFFIRMED**.

**IT IS FURTHER ORDERED** that Plaintiff's complaint filed November 21, 2011 (Doc. 1), is **DISMISSED WITH PREJUDICE**.

A judgment in accordance with this Memorandum Opinion and Order shall be entered accordingly.

**SO ORDERED**.

DATED this 8th day of February, 2013.

　　　　　　　　　　　　　　　　　　　　　　　　　／s／ E. Scott Frost
　　　　　　　　　　　　　　　　　　　　　　　　　**E. SCOTT FROST**
　　　　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**